# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs                                            No. CR 16-3068 JB

JAMES EDWARDS,

      Defendant,

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the United States' Sealed Motion In Limine to Admit Evidence Pursuant to Fed. R. Evid. 404(b), 413, and 608, filed June 21, 2017 (Doc. 59)("the United States' Motion"); and (ii) the Defendant's Second Motion In Limine to Exclude Evidence of Similar Crimes in Sexual Assault Cases, filed June 21, 2017 (Doc. 58)("Edwards' Motion"). The Court held a motion hearing on June 22, 2017. The primary issues are whether the Court should admit: (i) evidence regarding previous sexual assault allegations, which state that C.E.A., Defendant James Edwards' teenage daughter, accused her father of sexual abuse via a Facebook post; (ii) C.E.A.'s interview with Bureau of Indian Affairs Special Agent Marcelino ToersBijns, in which C.E.A. denied accusing her father of sexual abuse via Facebook, but indicated she may have been abused before; and (iii) the Amelia D. Garcia interview, in which Garcia indicates that Edwards has a reputation for sexual impropriety. The Court must determine whether the evidence is admissible rules 413, 403, 608, or 404(b) of the Federal Rules of Evidence.

The Court will deny the United States' Motion. The Court concludes that the evidence regarding the previous sexual assault allegations, the evidence from C.E.A.'s interview with

ToersBijns, and the evidence from the Garcia interview are inadmissible under rule 413 because the because the proffered evidence lacks sufficient detail to establish that the alleged other acts occurred, and because the proffered evidence is based on unreliable hearsay statements. In addition, rule 403 bars the evidence. The Court concludes that the evidence, which suggests that Edwards sexually abused his daughter, presents the dangers of confusing the issues and misleading the jury. The dangers substantially outweigh the evidence's probative value; the evidence lacks reliability and specificity, which reduce the evidence's probative value. Furthermore, rule 608 is inapplicable because the proffered evidence does not involve Edwards' character for truthfulness or untruthfulness; the evidence regards Edwards' character for sexual impropriety rather than his character for truthfulness.

The evidence regards The Court will grant in part Edwards' Motion. The evidence will be inadmissible unless Edwards: (i) testifies with broad statements or generalizations denying any sexual misconduct, in which case Edwards may open the door to the proffered evidence regarding the sexual assault allegations, C.E.A.'s interview statement regarding the sexual assault allegations, and Garcia's interview statement on Edwards' reputation for sexual impropriety; or (ii) offers reputation evidence for his character for sexual purity, in which case the Garcia's interview statements on Edwards' reputation for sexual impropriety may be admissible as reputation evidence under rule 405 of the Federal Rules of Evidence.

## FACTUAL BACKGROUND

Edwards is a practitioner of traditional medicine at the Pueblo of Acoma. See Transcript of Motion Hearing (taken June 27, 2017) at 41:17-20 (Ray), filed June 30, 2017 (Doc. 82)("2017

Tr."). The alleged victim asserts that she went to Edwards for a traditional healing rub[1] at Edwards' home. See 2017 Tr. at 26:25-27:3 (Marshall). The alleged victim asserts that, when she arrived, she made the traditional offering of cornmeal for the healing services. See 2017 Tr. at 26:25-27:3 (Marshall). According to the alleged victim, Edwards refused the offering of cornmeal. See 2017 Tr. at 27:5-10 (Marshall). Edwards then commenced the rub. See 2017 Tr. at 27:10-12 (Marshall). The alleged victim contends that, during the encounter, Edwards turned her, forcibly removed her pants, and placed his mouth on her genitalia. See 2017 Tr. at 27:13-17 (Marshall). The indictment charges that Edwards, on or about December 25, 2014, and continuing through January 31, 2015, unlawfully and knowingly engaged in and attempted to engage in a sexual act with V.S. by force. See Indictment at ¶ 1, at 1, filed July 12, 2016 (Doc. 2).

## PROCEDURAL BACKGROUND

Edwards filed a motion in limine to exclude the information from ToersBijns' interviews with C.E.A. and Garcia on June 21, 2017. See Edwards' Motion at 1. The United States filed a motion in limine to admit the information on June 21, 2017. See United States' Motion at 1. The Court held a motion proceeding on June 22, 2017. See 2017 Tr. at 1:11-13. The hearing, in part, addressed the United States' Motion and Edwards' Motion.

---

[1]A healing rub, or body rub, is part of the traditional healing process of the Acoma Pueblo. See Transcript of Appeal of Detention Proceedings at 30:23-31:1 (taken December 8, 2016), filed March 21, 2017 (Doc. 41)("2016 Tr.")(ToersBijns).

1.    **C.E.A. Evidence**.

    a.    **State of New Mexico Children, Youth, and Families Department Child Protective Services (CYFD) Intake Form, the Facebook Post, <u>and Sexual Assault Allegations.</u>**

During the course of his investigation, ToersBijns reviewed a report from Delia Edwards, Edwards' daughter. <u>See</u> United States' Motion at 1. D. Edwards reported that her sister, C.E.A., who is also J. Edwards' daughter, posted a sexual assault allegation against J. Edwards on Facebook. <u>See</u> United States' Motion at 1. J. Edwards' ex-wife Jennifer relayed these allegations to the State of New Mexico Children, Youth, and Families Department Child Protective Services ("CYFD"). <u>See</u> United States' Motion at 1-2; 2017 Tr. at 113:12-25 (Moss). CYFD drafted an intake form, which included a narrative report. <u>See</u> United States' Motion at 1-2; 2017 Tr. 113:12-25 (Moss); <u>id</u>. at 116:6-15 (Court). The narrative report stated:

> Today stating that the alleged victim posted on Facebook she was sexually assaulted by her father. Did not indicate when or how often. Jennifer stated father is currently in federal prison for sexually assaulting a woman. Source does not know when the last time contact with her father was. Source has no further information. Source has not seen the post on Facebook. Jennifer told source father will be incarcerated for the next two years.

2017 Tr. at 116:6-15 (Court). The person who received the CYFD report and completed the form, the "source," appears to be an unknown social worker. <u>See</u> 2017 Tr. at 116:6-17 (Court); <u>id</u>. 117:9-11 (Marshall). The social media post is not part of the record. <u>See</u> 2017 Tr. at 112:6-13 (Marshall); <u>id</u>. at 113:12-25 (Moss). The CYFD intake form indicated the existence of the Facebook post, but stated that the post was quickly deleted. <u>See</u> 2017 Tr. at 112:6-7 (Marshall); <u>id</u>. 113:14-25 (Moss); United States' Motion at 2.

    b.    **C.E.A. Interview Statements**.

ToersBijns interviewed C.E.A. on December 8, 2016. <u>See</u> United States' Motion at 2. During the interview, ToersBijns referenced the allegation that C.E.A. had posted an accusation

on social media that her father had sexually abused her. See 2017 Tr. at 111:24-112:13 (Marshall). ToersBijns' inquiry was based at least in part on the CYFD intake form. See 2017 Tr. at 113:14-20 (Moss); United States' Motion at 2. C.E.A. said that her sister told her that she had screenshots of the alleged social media post. See United States' Motion at 2. C.E.A. also stated that she did not know why her sister would say that she made such a social media post. See United States' Motion at 2. C.E.A. denied making the social media post and denied the sexual misconduct allegations the alleged social media post references. See 2017 Tr. at 112:12-13 (Marshall); United States' Motion at 2. C.E.A. stated that she has past trauma with her family, and that she could have been abused when she was little. See United States' Motion at 2. C.E.A. stated, however, that she did not remember whether she was abused. See United States' Motion at 2. C.E.A. added that she gets depressed, that she cuts herself, and that she had to receive treatment for her condition. See United States' Motion at 2. ToersBijns drafted a Notice of Allegation after the interview. See United States' Motion at 2. In the Notice of Allegation, ToersBijns wrote that C.E.A. had previously disclosed to her mother that she had been sexually abused, but she did not specify a suspect. See United States' Motion at 2. ToersBijns noted that no one had reported these allegations to the police. See United States' Motion at 2.

### c.    The Proffered Evidence.

The United States seeks admission of "the allegations related to C.E.A.'s Facebook post . . . ." See United States' Motion at 3. This includes the following evidence surrounding the allegations: (i) the sexual assault allegations contained within the CYFD intake form -- i.e. that C.E.A. posted sexual assault allegations on Facebook ("CYFD Intake Form"); (ii) D. Edwards' statement that her sister posted sexual assault allegations on Facebook and Edwards' ex-wife's report to CYFD of D. Edwards' accusation ("Facebook Accusations"); (iii) C.E.A.'s statements

- 5 -

regarding her past trauma -- i.e. that she thinks she had been abused before, and that she had received mental health treatment ("C.E.A.'s Interview Statement"); (iv) ToersBijns' question to C.E.A. about the Facebook post's allegations and C.E.A.'s subsequent denial ("C.E.A.'s Denial"); and (v) ToersBijns' Notice of Allegation in which he recorded C.E.A.'s statements about her past abuse ("Notice of Allegation"). See United States' Motion at 1-2, 4.

      **2.**       **Garcia Evidence.**

            **a.**       **Garcia Interview Statements.**

ToersBijns interviewed Garcia and drafted a report after the interview. See United States' Motion at 2. During the interview, ToersBijns asked about Garcia's version of events on the day of the alleged assault. See United States' Motion at 2. ToersBijns asked if Garcia had heard of other instances in which Edwards engaged in improper sexual activity when he was supposed to be administering traditional medicine. See 2017 Tr. at 118:9-12; United States' Motion at 2-3. Garcia responded that she had only heard rumors. See 2017 Tr. at 118:9-12; United States' Motion at 2-3. Garcia commented later in the interview that people do not talk about medicine men's misconduct for fear of retribution. See United States' Motion at 3. Garcia stated that medicine men have power and can do whatever they want. See United States' Motion at 3.

            **b.**       **The Proffered Evidence.**

The United States seeks admission of Garcia's statements regarding Edwards' reputation for sexual impropriety. See United States' Motion at 5. This includes Garcia's statement that she had heard "rumors" regarding Edwards' reputation for sexual misconduct, and it includes Garcia's statements regarding the power and influence of medicine men ("Garcia Interview Statements"). See United States' Motion at 5.

## 2. **The United States' Motion.**

The United States seeks to admit the following evidence: (i) the CYFD Intake Form; (ii) the Facebook Accusations; (iii) C.E.A.'s Interview Statement; (iv) C.E.A.'s Denial; (v) the Notice of Allegation; and (vi) Garcia's Interview Statements. See United States' Motion at 1-2, 5. The United States suggests that the Court should admit the evidence pursuant to rules 404(b), 413, and 608 of the Federal Rules of Evidence. See United States' Motion at 1. The United States argues the evidence should be admissible on cross examination under rule 608, assuming that Edwards makes some blanket statements -- e.g., that he has never been accused of sexual impropriety and has a sterling reputation -- or otherwise invites a response to the evidence. See United States' Motion at 6-7. The United States also asserts the evidence's admissibility under rule 413, arguing that the evidence constitutes evidence of similar sexual assault crimes within rule 413's meaning. See United States' Motion at 4-5. The United States asserts that the evidence establishes "knowledge, intent, and absence of a mistake or accident." United States' Motion at 5. Specifically, the United States' evidentiary theory appears to be that the evidence demonstrates Edwards had an improper intent when administering healing rubs, and that there was not a mistake or accident as to consent. See United States' Motion at 5.

## 3. **Edwards' Motion.**

Edwards argues several grounds against the admission of the information that the United States proffers. See Edwards' Motion at 2. Edwards argues that the insinuations which the statements contain are insufficient to meet the relevance requirement of rule 413. See Edwards' Motion at 2-3. Under rule 403, Edwards argues that the information which the United States proffers has little to no probative weight, based on the accusations' uncertainty and unreliability. See Edwards' Motion at 2-3. Edwards also argues that the proffered statements are unduly

prejudicial, given that they contain allegations of familial child sexual abuse.  <u>See</u> Edwards'

Motion at 2-3.

## <u>LAW REGARDING RULES 413 AND 403 OF THE FEDERAL RULES OF EVIDENCE</u>

Rule 413 provides that, in cases where a defendant is charged with a sexual assault

offense, "evidence of the defendant's commission of another offense or offenses of sexual

assault is admissible, and may be considered for its bearing on any matter to which it is

relevant."  Fed. R. Evid. 413(a).  <u>See</u> Fed. R. Evid. 414 (permitting the admission of evidence of

the defendant's commission of similar crimes of child molestation when the defendant is charged

with child molestation); Fed. R. Evid. 415 (permitting the admission of evidence of the

defendant's commission of similar acts of sexual assault or child molestation in civil cases

concerning sexual assault or child molestation).  Evidence is admissible under rule 413 when: (i)

the defendant is on trial for a sexual assault offense; (ii) the proffered evidence relates to another

sexual assault; and (iii) the evidence is relevant.  <u>See</u> <u>United States v. Fred</u>, No. CR 05-801 JB,

2006 WL 4079618, at *2 (D.N.M. 2006)(Browning, J.)(citing <u>Seeley v. Chase</u>, 443 F.3d 1290,

1294 (10th Cir. 2006)).  For the purposes of rule 413, an "offense of sexual assault" includes any

crime under federal law that involved:

> (1) any conduct proscribed by chapter 109A of title 18, United States Code;
>
> (2) contact, without consent, between any part of the defendant's body or an object and the genitals or anus of another person;
>
> (3) contact, without consent, between the genitals or anus of the defendant and any part of another person's body;
>
> (4) deriving sexual pleasure or gratification from the infliction of death, bodily injury, or physical pain on another person; or
>
> (5) an attempt or conspiracy to engage in conduct described in paragraphs (1)-(4).

Fed. R. Evid. 413(d)(1)-(5). For evidence admissible under rule 413, the person "need not have been convicted of or charged with a previous assault for it to be admissible . . . ." United States v. Pascal, 610 F. App'x 791, 793 (10th Cir. 2015). The similar acts must be established, however, by "sufficient evidence to support a finding by the jury that the defendant committed the similar act." See United States v. Wilson, No. CR 09-1465 JB, 2010 WL 2954562, at *4 (D.N.M. June 18, 2010)(Browning, J.)(citing United States v. Enjady, 134 F.3d 1427, 1433 (10th Cir. 1998)). In other words, the district court "must make a preliminary finding that a jury could reasonably find by a preponderance of the evidence that the 'other act' occurred." See United States v. Wilson, 2010 WL 2954562, at *4 (citing United States v. Enjady, 134 F.3d at 1433). This is another way to state the relevance requirement. See Huddleston v. United States, 485 U.S. 681, 689 (1988).

Evidence is more likely to overcome the threshold question -- i.e., relevancy -- when it provides detail and specifics about the similar acts. See, e.g., United States v. Fred, 2006 WL 4079618, at *1-2 (allowing 413 evidence of similar acts documented in an FBI form that provided a detailed account of the alleged similar act). See also United States v. Wilson, 2010 WL 2954562, at *1-2, *6 (allowing 414 evidence of similar acts when the witness described uncharged sexual assaults in detail). For example, in United States v. Fred the witness described similar acts of sexual assault including references to time and date, specific conduct -- e.g., where the defendant touched her, and specific circumstances surrounding the sexual assault. See United States v. Fred, 2006 WL 4079618, at *1-2. This Court found that the evidence overcame the threshold question of relevancy. See United States v. Fred, 2006 WL 4079618, at *1, 4-5.

The United States Court of Appeals for the Tenth Circuit has held that, when evidence falls within rule 413's scope, there is a presumption that the evidence is admissible. See United

States v. Fred, 2006 WL 4079618, at *3 (citing United States v. Enjady, 134 F.3d at 1431). Rule 413 reflects Congress' belief that it is "necessary to lower the obstacles to admission of propensity evidence in . . . sexual assault cases [because of] the assistance it provides in assessing credibility." United States v. Enjady 134 F.3d at 1431.

Despite rule 413's language, and the presumption in favor of admission, the Tenth Circuit has held that, consistent with rule 403, district courts still must weigh the probative value of evidence introduced pursuant to rule 413 against its prejudicial impact. United States v. Fred, 2006 WL 4079618, at *3 (citing United States v. Guardia, 135 F.3d 1326, 1330 (10th Cir. 1998))("We hold that a court must perform the same 403 analysis that it does in any other context, but with careful attention to both the significant probative value and the strong prejudicial qualities inherent in all evidence submitted under 413."). In applying rule 403 to the proffered evidence, the Court should consider:

> 1) how clearly the prior act has been proved; 2) how probative the evidence is of the material fact it is admitted to prove; 3) how seriously disputed the material fact is; and 4) whether the government can avail itself of any less prejudicial evidence. When analyzing the probative dangers, a court considers: 1) how likely is it such evidence will contribute to an improperly-based jury verdict; 2) the extent to which such evidence will distract the jury from the central issues of the trial; and 3) how time consuming it will be to prove the prior conduct.

Seeley v. Chase, 443 F.3d at 1295 (quoting United States v. Enjady, 134 F.3d at 1433). Finally, while the Tenth Circuit has acknowledged that propensity evidence has "indisputable probative value," its worth in any particular case is based on multiple factors, including "the similarity of the prior acts to the acts charged, the closeness in time of the prior acts to the charged acts, the frequency of the prior acts, the presence or lack of intervening events, and the need for evidence beyond the testimony of the defendant and alleged victim." United States v. Fred, 2006 WL 4079618, at *3 (citing United States v. Guardia, 135 F.3d at 1331).

## LAW REGARDING RULE 608 OF THE FEDERAL RULES OF EVIDENCE

"Rule 608 of the Federal Rules of Evidence provides certain mechanisms for attacking witnesses' character for truthfulness or untruthfulness." Montoya v. Shelden, No. CIV 10-0360 JB/WDS, 2012 WL 5476882, at *7 (D.N.M. Oct. 31, 2012)(Browning, J.). See United States v. Huerta-Rodriguez, No. CR 09-3206 JB, 2010 WL 3834061, at *7 (D.N.M. 2010)(Browning, J.)(same). Rule 608(a) states:

> A witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character. But evidence of truthful character is admissible only after the witness's character for truthfulness has been attacked.

Fed. R. Evid. 608(a). Rule 608 "focuses on impeaching a witness' character for truthfulness by allowing introduction of evidence probative of the witness' propensity to lie." United States v. Aranda-Diaz, No. CR 12-2686 JB, 2014 WL 459607, at *5 (D.N.M. 2014)(Browning, J.). The truthfulness or untruthfulness of a witness may be attacked by opinion or reputation evidence without ever proffering evidence of a character for truthfulness. See United States v. Holt, 486 F.3d 997, 1002 (7th Cir. 2007)(noting that, while it is within the trial court's discretion to prohibit cross-examination of a police officer whether he had been suspended to call into question his credibility, the plaintiff "could have used Rule 608(a) and called a member of the department to testify directly about his opinions or reputation of [the officer's credibility]"). To establish a proper foundation for the opinion or reputation testimony, a witness must show: "such acquaintance with the person under attack, the community in which he has lived and the circles in which he has moved, as to speak with authority of the terms in which generally he is regarded." Montoya v. Shelden, 898 F. Supp. 2d 1279, 1292 (D.N.M. 2012)(Browning,

J.)(citing United States v. Ruiz-Castro, 92 F.3d 1519, 1529 (10th Cir. 1996), overruled on other grounds by United States v. Flowers, 464 F.3d 1127 (10th Cir. 2006)).

Rule 608(b) provides the rule for admission of specific instances of conduct:

Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of:

**(1)** the witness; or

**(2)** another witness whose character the witness being cross-examined has testified about.

Fed. R. Evid. 608(b). "Under Federal Rule of Evidence 608(b), specific unrelated instances of a witness's prior misconduct may be used to impeach the witness at the discretion of the court, however, only to the extent the misconduct reflects on the witness's character for truthfulness." Montoya v. Shelden, 898 F. Supp. 2d at 1292 (citing United States v. Beltran-Garcia, 338 F. App'x 765, 770 (10th Cir. 2009)).

Not every bad act is probative of veracity. See United States v. Aranda-Diaz,[2] 2014 WL 459607, at *5. For example, in United States v. Aranda-Diaz this Court found that an arrest for domestic violence and child abuse did not qualify under rule 608. See United States v. Aranda-Diaz, 2014 WL 459607, at *5 ("[Defendant's] arrest for domestic violence and child abuse is not, in isolation, probative of his character for truthfulness . . . .") Courts should distinguish between crimes of dishonesty and other crimes even if the distinction is not specified in rule 608. See United States v. Aranda-Diaz, 2014 WL 459607, at *5 (citing 2 Stephen A. Saltzburg,

---

[2]Westlaw misspells this case's defendant's surname as "Aranda-Daiz." See United States v. Aranda-Daiz, 2014 WL 459607, at *1. The Court reports the correct spelling in this reference and all subsequent references to the case.

Michael M. Martin, & Daniel J. Capra, Fed. Rules of Evidence Manual §§ 608.02[4], at 608-9-608-10 (9th ed. 2006)).

### LAW REGARDING RULE OF EVIDENCE 404(b)

Rule 404(b) is a rule of inclusion rather than a rule of exclusion. See United States v. Romine, 377 F. Supp. 2d 1129, 1131-32 (D.N.M 2005)(Browning, J.)(citing Huddleston v. United States, 485 U.S. at 688). Rule 404(b) provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." Fed. R. Evid. 404. Thus, the rule generally provides for the admission of all evidence of other acts relevant to an issue in the trial, unless the evidence is introduced to prove criminal propensity or is unfairly prejudicial. See United States v. Romine, 377 F. Supp. 2d at 1132 (citing United States v. Segien, 114 F.3d 1014, 1022 (10th Cir. 1997), overruled on other grounds by Jones v. United States, 526 U.S. 227, 227 (1999)). To determine whether evidence is admissible for one of the purposes stated in rule 404(b), the Supreme Court of the United States has articulated the following four-part test:

> [F]irst, from the requirement of Rule 404(b) that the evidence be offered for a proper purpose; second, from the relevancy requirement of Rule 402 -- as enforced through Rule 104(b); third, from the assessment the trial court must make under Rule 403 to determine whether the probative value of the similar acts evidence is substantially outweighed by its potential for unfair prejudice . . .; and fourth, from Federal Rule of Evidence 105, which provides that the trial court shall, upon request, instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted.

Huddleston v. United States, 485 U.S. at 691-92 (internal citations and footnote omitted). See United States v. Zamora, 222 F.3d 756, 762 (10th Cir. 2000). Accordingly, "[t]he district court must make a threshold determination that the offered evidence is probative of a material issue

other than character before admitting evidence under Rule 404(b)." United States v. Birch, 39

F.3d 1089, 1093 (10th Cir. 1994)(internal quotations and citations omitted).

"The Government must articulate precisely the evidentiary hypothesis by which a fact of consequence may be inferred from the evidence of other acts.  In addition, the trial court must specifically identify the purpose for which such evidence is offered and a broad statement merely invoking or restating Rule 404(b) will not suffice."

United States v. Kendall, 766 F.2d 1426, 1436 (10th Cir. 1985).  Before the court may admit any

evidence of the defendant's prior bad acts, therefore, the United States and the court must

"precisely articulate the purpose of the proffered evidence." See United States v. Romine, 377 F.

Supp. 2d at 1132 (citing United States v. Segien, 114 F.3d at 1023).  Extrinsic acts evidence is

admissible only pursuant to rule 404(b) where "there is sufficient evidence to support a finding

by the jury that the defendant committed the similar act." Huddleston v. United States, 485 U.S.

at 685.  Moreover, in determining whether to rule that the rule 404(b) evidence is admissible, the

court must weigh the probative value of the evidence against the potential for undue prejudice to

the defendant.  See United States v. Romine, 377 F. Supp. 2d at 1132 (citing United States v.

Zamora, 222 F.3d at 762-63).

## LAW REGARDING HEARSAY

"Hearsay testimony is generally inadmissible." United States v. Christy, No. CR 10-1534

JB, 2011 WL 5223024, at *5 (D.N.M. Sept. 21, 2011)(Browning, J.)(citing Fed. R. Evid. 802).

Under rule 801(c), "hearsay is a statement, other than one made by the declarant while testifying

at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R.

Evid. 801(c).  Hearsay bars a party from presenting its own statements, such as "a defendant . . .

attempt[ing] to introduce an exculpatory statement made at the time of his arrest without

subjecting himself to cross-examination." United States v. Cunningham, 194 F.3d 1186, 1199

(11th Cir. 1999)(Carnes, J.).  A statement that is otherwise hearsay, however, may be offered for

a permissible purpose other than to prove the truth of the matter asserted, including impeaching a witness. See United States v. Caraway, 534 F.3d at 1299 ("We have already explained why the content of the statement, if used substantively, would be inadmissible hearsay. If admitted for impeachment purposes, however, it is not hearsay.").

Hearsay is generally unreliable and untrustworthy. See Chambers v. Mississippi, 410 U.S. 284, 288 (1973)(noting hearsay is generally untrustworthy and lacks traditional indicia of reliability); United States v. Lozado, 776 F.3d 1119, 1121 (10th Cir. 2015)("Hearsay is generally inadmissible as evidence because it is considered unreliable.")(citation omitted); United States v. Console, 13 F.3d 641, 657-58 (3d. Cir. 1993)(stating hearsay is "inherently untrustworthy" due to the lack of an oath, presence in court, and cross examination)(citation omitted). Testimonial proof is necessarily based upon the human senses, which can be unreliable. See 5 J. Weinstein & M. Berger, Weinstein's Federal Evidence §§802.02[1][b], at 802-5 (J. McLaughlin ed., 2d ed. 2017)("Weinstein's Federal Evidence"). The Anglo-American tradition uses three devices to illuminate inaccuracies in the testimonial proof: (i) the oath; (ii) personal presence at trial; (iii) and cross examination. See Weinstein's Federal Evidence § 802.02[2][a], at 802-5. It is difficult to evaluate the credibility of out-of-court statements when the three safeguards mentioned above are unavailable. See Weinstein's Federal Evidence § 802.02[3], at 802-6 to -7. Courts view hearsay evidence as unreliable because it is not subject to an oath, personal presence in court, or cross examination. See, e.g., United States v. Console, 13 F.3d at 657-58.

## ANALYSIS

The United States contends that the following evidence should be admissible under rules 404(b), 413, and 608 of the Federal Rules of Evidence: (i) the CYFD Intake Form; (ii) the Facebook Accusations; (iii) C.E.A.'s Interview Statement; (iv) C.E.A.'s Denial; (v) Garcia's

Interview Statements; and (vi) the Notice of Allegation. See United States' Motion at 1, 5. Edwards contends that the evidence should be inadmissible, because the unreliability of the evidence renders rule 413 inapplicable. See Edwards' Motion at 2-3. Edwards also argues that the danger of unfair prejudice substantially outweighs the evidence's probative value, confusing the issues, and misleading the jury. See Edwards' Motion at 2-3. The Court concludes that the proffered evidence is not admissible under rule 413. Because the proffered evidence lacks sufficient detail to establish that the alleged "other acts" occurred, and because the proffered evidence is based on unreliable hearsay statements, the Court concludes that there is insufficient evidence "to support a finding by the jury that the defendant committed the similar act." Huddleston v. United States, 485 U.S. at 685.

The Court concludes that the following evidence is also inadmissible under rule 403 of the Federal Rules of Evidence: (i) the CYFD Intake Form; (ii) the Facebook Accusations; (iii) C.E.A.'s Interview Statement; (iv) C.E.A.'s Denial; (v) Garcia's Interview Statements; and (vi) the Notice of Allegation. The Court considers the factors Seeley v. Chase mentions for applying rule 403 -- (i) how likely such evidence will contribute to an improperly-based jury verdict; (ii) the extent to which such evidence will distract the jury from the central issues of the trial; and (iii) how time consuming it will be to prove the prior conduct. Seeley v. Chase, 443 F.3d at 1295 (quoting United States v. Enjady, 134 F.3d at 1433). The Court recognizes that the dangers of confusing the issues and misleading the jury substantially outweigh the evidence's probative value. The proffered evidence's lack of specificity and reliance upon unreliable hearsay statements weaken its probative value. The Court is concerned that the proffered statements, which concern Edwards' reputation for sexual impropriety, may confuse the jury or mislead it into an improperly based verdict.

The Court concludes that the following evidence is not admissible under rule 608: (i) the CYFD Intake Form; (ii) the Facebook Accusations; (iii) C.E.A.'s Interview Statement; (iv) C.E.A.'s Denial; (v) Garcia's Interview Statements; and (vi) the Notice of Allegation. In the Court's view, the proffered evidence does not concern Edwards' character for truthfulness or untruthfulness. The proffered evidence does not discuss Edwards' reputation for truthfulness or untruthfulness and it does not discuss instances of Edwards lying, misleading, or deceiving. The evidence that the United States proffers concerns Edwards' reputation for sexual impropriety rather than his truthfulness or untruthfulness. The Court concludes, therefore, that rule 608 is inapplicable to the proffered evidence.

## I.   RULE 413 IS INAPPLICABLE TO THE EVIDENCE AS PROFFERED.

The Court must apply a three-part test for admissibility of evidence offered under rule 413. See Seeley v. Chase, 443 F.3d at 1294. The test's first prong, that Edwards is accused of a crime of sexual assault, is satisfied. See Indictment ¶ 1, at 1. Edwards is accused of aggravated sexual abuse in violation of 18 U.S.C. §§1153, 2241(a), and 2246(2)(B). See Indictment ¶ 1, at 1. Specifically, Edwards is accused of forcibly removing the alleged victim's pants, and placing his mouth on her genitalia without her consent. See 2017 Tr. at 27:13-17 (Marshall). This accusation satisfies the test's first prong. See Fed. R. Evid. 403(d)(defining "sexual assault" as including nonconsensual contact between any part of the defendant's body and another person's genitals); Seeley v. Chase, 443 F.3d at 1294.

The test's second prong, i.e., whether the proffered evidence is evidence related to another sexual assault, is problematic. The Court understands that the evidence of similar acts need not necessarily be from a charged offense or conviction. See United States v. Pascal, 610 F. App'x at 793. The Court is required, however, to make a preliminary determination whether

the proffered evidence is sufficient for a jury to determine that the alleged other act occurred. See United States v. Enjady, 134 F.3d at 1433.

The evidence proffered is insufficient "to support a finding by the jury that the defendant committed the similar act." Huddleston v. United States, 485 U.S. at 685. The United States proffers: (i) the CYFD Intake Form and the Facebook Accusations -- evidence in which different sources allege C.E.A. posted sexual assault allegations against Edwards on Facebook; (ii) C.E.A.'s Interview Statement and C.E.A.'s Denial, in which C.E.A. claims she may have been abused by family before; and (iii) Garcia's Interview Statements, which state that Garcia heard "rumors" that Edwards has a reputation for sexual impropriety. First, the proffered evidence does not contain enough specific information to outline a specific act or to make a meaningful comparison under rule 413. See, e.g., 2017 Tr. at 111:24-112:13 (Marshall)(mentioning an accusation of sexual assault but omitting any specific circumstances); United States' Motion at 1-2 (stating the accusations contained in the social media post without outlining any specific circumstances). To make a cogent comparison, as rule 413 evidence aims to do, the proffered evidence needs to provide a detailed enough basis to make a comparison. Cf. United States v. Fred, 2006 WL 4079618, at *1-2 (allowing detailed 413 evidence that described the time, place, and specific conduct of the defendant); United States v. Enjady, 134 F.3d at 1433 (requiring sufficient evidence in order to admit 413 similar acts evidence). It is difficult for the Court to determine that a jury could reasonably conclude that the alleged "other act" occurred, as United States v. Enjady requires, when the "other act" is not clearly defined.

The proffered evidence regarding the sexual assault allegations, described above, consists of out-of-court statements. See 2017 Tr. at 111:24-112:13 (Marshall). The evidence is unspecific and lacking in detail -- for example, the accusations contained within the CYFD

Intake Form lack details regarding the date, time, specific actions, and specific circumstances of the alleged sexual abuse. <u>See</u> 2017 Tr. at 116:6-15 (Court); United States' Motion at 1-2. These allegations of allegations and references to "rumors" do not contain enough specific information to make a meaningful comparison under rule 413. <u>Cf.</u> <u>United States v. Fred</u>, 2006 WL 4079618, at *1-2 (allowing detailed 413 evidence that described the time, place, and specific conduct of the defendant); <u>United States v. Enjady</u>, 134 F.3d at 1433 (requiring sufficient evidence in order to admit 413 similar acts evidence). The proffered evidence does not, for example, contain more specific factual assertions that Edwards abused a position of power, or engaged in unwanted sexual activity during a healing rub.[3] <u>See</u> 2017 Tr. at 111:24-112:13 (Marshall); United States' Motion at 1-2. The proffered evidence does not clearly define the alleged "other act." This fact inclines the Court against concluding that the requisite preliminary determination -- that there is "sufficient evidence to support a finding by the jury that the defendant committed the similar act," <u>Huddleston v. United States</u>, 485 U.S. at 685 -- is met.

Second, the proffered statements are based upon hearsay and lack sufficient reliability. <u>See</u>, <u>e.g.</u>, <u>United States v. Lozado</u>, 776 F.3d at 1121 ("Hearsay is generally inadmissible as evidence because it is considered unreliable.")(citation omitted). The rule against hearsay is couched in the principles of credibility and reliability. <u>See</u> Weinstein's Federal Evidence § 802.02[3], at 802-6-7. Testimonial proof is necessarily based upon the human senses, which can be unreliable. <u>See</u> Weinstein's Federal Evidence § 802.02[1][b], at 802-5. The Anglo-American tradition uses three devices to illuminate inaccuracies in the testimonial proof: (i) the oath; (ii) personal presence at trial; and (iii) cross examination. <u>See</u> Weinstein's Federal Evidence §

---

[3]The Court does not opine that such specific comparisons or information are required. The Court offers examples that may strengthen the argument to overcome the preliminary hurdle for rule 413 evidence.

802.02[2][a], at 802-5.  It is difficult to evaluate the credibility of out-of-court statements when the three safeguards mentioned above are unavailable.  See Weinstein's Federal Evidence § 802.02[3], at 802-6 to -7.

The statements that the United States proffers as 413 evidence are hearsay.  The Federal Rules of Evidence define hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 808(c).  The C.E.A. interview's statements contain multiple levels of hearsay.  See 2017 Tr. at 111:24-112:13 (Marshall); id. 113:12-25 (Moss); United States' Motion at 1-2.  The ToersBijns and C.E.A. interview's statements are out-of-court statements.  See 2017 Tr. at 111:24-112:13 (Marshall); id. 113:12-25 (Moss); United States' Motion at 1-2.  The CYFD intake form is also an out-of-court statement that contains additional out-of-court statements -- for example, statements from C.E.A.'s mother.  See United States' Motion at 1-2.  Because the United States proffers the evidence as rule 413 evidence, the United States proffers the statements for the truth of the matter asserted.  Rule 413 evidence seeks to compare previous instances of sexual assault to the accused sexual assault; the United States asserts the truth of the previous sexual assault as a means to compare it to Edwards' alleged conduct.  The proffered evidence from the Garcia interview is also hearsay.  See 2017 Tr. at 118:9-17 (Court); United States' Motion at 2-3.  ToersBijns' asked Garcia whether she had heard about improper sexual conduct between Edwards and his children, and Garcia responded she had only heard "rumors." See 2017 Tr. at 118:9-17 (Court); United States' Motion at 2-3.  The statements are based on an out-of-court interview.  United States' Motion at 2-3.  Because the United States has proffered the evidence under rule 413, it proffers the statements for the truth of the matter asserted.  The

United States has not proffered other evidence, such as the alleged Facebook post or the unnamed source's testimony.  See 2017 Tr. at 117:3-11 (Court, Marsh all).

The hearsay statements lack reliability.  The out-of-court statements are not subject to any of the three devices to guarantee reliability -- the oath, personal presence at trial, or cross examination.  See Weinstein's Federal Evidence § 802.02[3], at 802-6 to -7.  When these safeguards are absent, it is difficult to evaluate the credibility of the statements.  See Weinstein's Federal Evidence § 802.02[3], at 802-6 to -7.  Hearsay is inherently untrustworthy and unreliable, because it is not subject to the three safeguards.  See Chambers v. Mississippi, 410 U.S. 284, 288 (1973)(noting hearsay is generally untrustworthy and lacks traditional indicia of reliability); United States v. Console, 13 F.3d 641, 657-58 (3d. Cir. 1993)(stating hearsay is "inherently untrustworthy" due to the lack of an oath, presence in court, and cross examination)(citation omitted).  Because the proffered statements are hearsay and lack reliability, the Court concludes that the requisite preliminary determination -- that there is "sufficient evidence to support a finding by the jury that the defendant committed the similar act" Huddleston v. United States, 485 U.S. at 685 -- is not met.

The Court concludes that there is not "sufficient evidence to support a finding by the jury that the defendant committed the similar act."  Huddleston v. United States, 485 U.S. at 685.  The evidence's unspecific, hearsay statements are insufficient to determine that the similar act occurred.  The proffered evidence fails the requisite preliminary test set forth in United States v. Enjady.  The evidence as proffered does not qualify as 413 evidence.  This means that the evidence is not admissible under rule 413 and the evidence is not entitled to the presumption of admissibility that rule 413 evidence enjoys.  See Fed. R. Evid. 413.  See also United States v. Enjady, 134 F.3d at 1431.

## II.    THE EVIDENCE AS PROFFERED DOES NOT SATISFY RULE 403.

Even if the proffered evidence would fit under rule 413, it would not pass rule 403 muster.  To begin this analysis, the Court must review the factors that <u>Seeley v. Chase</u> mentions for applying rule 403.   The relevant factors that the Court considers are: (i) how clearly the proffered evidence can prove alleged act; (ii) how probative the evidence is of the material fact it is admitted to prove; (iii) how seriously disputed the material fact is; and (iv) whether the United States can avail itself of any less prejudicial evidence.  <u>See</u> <u>Seeley v. Chase</u>, 443 F.3d at 1295 (quoting <u>United States v. Enjady</u>, 134 F.3d at 1433).

The Court first considers how clearly the proffered evidence can prove the alleged act. The proffered evidence has not clearly defined the alleged prior act.   The proffered evidence references unspecific allegations.  <u>See</u> United States' Motion at 2-3; 2017 Tr. at 111:24-112:13 (Marshall).   Furthermore, Edwards' daughter, C.E.A., denies the allegations.  <u>See</u> 2017 Tr. 112:12-13 (Marshall).   In the other proffered statement, Garcia stated that she had heard "rumors" about allegations of sexual abuse.  <u>See</u> 2017 Tr. at 118:9-17 (Court); United States' Motion at 2-3.  Neither of these statements clearly defines the prior act.  If the prior act is not clearly defined, it is difficult to clearly prove that such an act occurred.   Furthermore, the unreliability of hearsay and hearsay-within-hearsay statements present a barrier to providing clear proof.  <u>See</u> <u>Chambers v. Mississippi</u>, 410 U.S. at 288 (noting that hearsay is generally untrustworthy and lacks traditional indicia of reliability); <u>United States v. Console</u>, 13 F.3d at 657-58 (stating that hearsay is "inherently untrustworthy" because of the lack of an oath, presence in court, and cross examination)(citation omitted).   By itself, it is difficult for the proffered evidence to prove the alleged act or acts.   The first factor, how clearly the proffered evidence is able to be proved, <u>Seeley v. Chase</u>, 443 F.3d at 1295, weighs against admitting the

proffered evidence. Second, the Court is skeptical about the statements' probative value given the material facts they intend to prove. Presumably, the evidence is proffered to establish the material fact that Edwards has a history or proclivity for sexually assaulting women. The Court understands the Tenth Circuit's view that such rule 413 propensity evidence has "indisputable" probative value. United States v. Guardia, 135 F.3d at 1331. The probative value of "rumors," murmurs of accusations, and denials of accusations, however, is questionable. That the proffered evidence does not specify any particular acts or conduct weakens it under a rule 403 analysis. Rumors and murmurs do not illuminate Edwards' character and habits.

The third factor in favor of excluding the proffered evidence under rule 403 is whether the United States has less prejudicial evidence available to prove its point. See Seeley v. Chase, 443 F.3d at 1295. The general proposition that the United States seeks to establish, which is apparent throughout the United States' motion and representations the United States made at the hearing, is that Edwards has a proclivity or propensity toward sexual impropriety with women. See 2017 Tr. at 118:19-119:12 (Marshall). The United States has evidence that is less prejudicial than the proffered evidence. See, e.g., Transcript of Interview of James Edwards Sr. at 43:17-19, 43:21-24 (taken April 6, 2015)(referencing potential testimony from an Acoma medicine man who asked Edwards to stop performing ceremonies on women). The United States proffers "the allegations related to C.E.A.'s Facebook post . . . ." See United States' Motion at 3. This includes the statements contained within the CYFD intake form, which suggest that C.E.A. accused Edwards of sexual abuse via a Facebook post. See 2017 Tr. at 116:6-15 (Court). The proffered evidence also includes the C.E.A. Interview Statement, in which C.E.A. indicates that she may have been abused in the past by her family, and C.E.A.'s Denial, in which she denied accusing her father of sexual abuse. See United States' Motion at 1-2. Although the other

evidence available to the United States may not be as potent as the proffered evidence, the United States can still reach the general proposition, through inferences or otherwise, in a less prejudicial way.

The Court understands that the United States and Edwards vigorously dispute the facts that the proffered evidence seeks to prove. The Court, therefore, is more concerned about the potential dangers of allowing such evidence past rule 403 gate. If the issue's facts were less disputed or less relevant to the case's central issues, the United States' arguments would have more force. That counterfactual notwithstanding, the level of dispute over the proffered evidence, and the information contained therein, counsels that the Court to proceed with caution.

The Court concludes that several dangers exist associated with admitting the evidence the United States proffers. To analyze the proffered evidence's dangers, the Court applies the rule 403 factors that <u>Seeley v. Chase</u> lists. See <u>Seeley v. Chase</u>, 443 F.3d at 1295. First, the Court is concerned that the proffered evidence may distract or inflame the jury, obscuring the trial's central issues. The central issue of this case concerns Edwards' alleged sexual assault against an adult woman. <u>See</u> Indictment ¶ 1, at 1. The proffered information may lead the jury to consider an issue not being tried -- an alleged sexual assault that Edwards perpetrated against his daughter. Understandably, accusations of father-daughter sexual impropriety may dominate the jury's attention.

The Court is also concerned that allowing such evidence in the jury's presence will contribute to an improperly based jury verdict. Although evidence of improper sexual proclivities may be relevant, Edwards is charged with a specific crime -- aggravated sexual assault -- and the jury should be focused on rendering its judgment on that crime's elements. Edwards' relationship with his daughter is not a central issue in the case. <u>See</u> Indictment ¶ 1, at

1. Edwards' general reputation in the community should not be a basis for conviction. See United States v. Guardia, 135 F.3d at 1330-31 (cautioning courts to consider in a 403 analysis whether the jury will convict upon other crimes or because it perceives the defendant as a "bad person deserving punishment"). Allowing the proffered evidence to be presented to the jury may increase the likelihood that a jury will render its judgment not on the crime's elements, but on Edwards' reputation and perceived character flaws.

Considering the factors as a whole, the Court concludes that the evidence should not be admissible under rule 403. The United States' proffered evidence offers unspecific information and hearsay statements, rendering the alleged acts difficult to clearly prove. The probative value of such unreliable evidence is questionable at best, and the United States has less prejudicial evidence to prove their general assertions. The proffered evidence reaches more than a minor issue -- its insinuations and inferences get to the heart of the case. Accordingly, the proffered evidence is dangerous: it may inflame the jury or lead it astray from its lawfully charged duties. For these reasons, the Court concludes the evidence is inadmissible under rule 403.

## III.    RULE 404(B) AND RULE 608 ARE INAPPLICABLE TO THE EVIDENCE AS PROFFERED.

The United States asserts that the proffered evidence should be admissible under rule 608. Rule 608 regards a witness' character for truthfulness or untruthfulness. See Fed. R. Evid. 608 ("A Witness' Character for Truthfulness or Untruthfulness"). ToersBijns' question about an alleged social media posting of a sexual assault accusation does not involve Edwards' character for truthfulness or untruthfulness. See, e.g., 2017 Tr. at 111:24-112:13 (Marshall)(failing to discuss Edwards' general reputation for truthfulness or untruthfulness, or any specific instances of untruthfulness); United States' Motion at 1-3 (same). Similarly, testimony from Garcia that she heard "rumors" of Edwards' misconduct does not involve Edwards' character for

truthfulness or untruthfulness.  2017 Tr. at 118:19-119:12 (Marshall)(failing to discuss Edwards' general reputation for truthfulness or untruthfulness, or any specific instances of untruthfulness). The evidence does not, of itself, involve dishonesty, fraud, or deceit.  The evidence as proffered does not explore Edwards' reputation for honesty or dishonesty, nor does it seek to offer an opinion on Edwards' character for honesty or dishonesty.  The proffered evidence concerns Edwards' reputation regarding sexual misconduct or Edwards' character for sexual misconduct. See 2017 Tr. at 111:24-112:13 (Marshall); id. at 118:19-119:12 (Marshall); United States' Motion at 1-3.  Rule 608 is inapplicable in this situation, because the proffered evidence does not involve truthfulness or untruthfulness.

The United States also asserts that the proffered evidence is admissible under rule 404(b). Rule 404(b) and rule 413 both share a preliminary threshold.  See United States v. Enjady, 134 F.3d at 1433.  Under both rules, there must be "sufficient evidence to support a finding by the jury that the defendant committed the similar act."  Huddleston v. United States, 485 U.S. at 685. The Court employs similar reasoning for this rule 404(b) issue as it applied earlier in the opinion to the rule 413 issue.  The evidence as proffered is insufficient for a jury to conclude that the act occurred.  The United States has offered hearsay and hearsay-within-hearsay statements, as well as vague, unspecific rumors as innuendo to suggest Edwards' proclivity for sexual misconduct. See 2017 Tr. at 111:24-112:13 (Marshall); id. at 118:19-119:12 (Marshall); United States' Motion at 1-3.  Rumors, hearsay, and unspecific allegations are insufficient evidence for a jury to find that the "other acts" the evidence suggests occurred.  For this reason, rule 404(b) is inapplicable to the evidence as proffered.  Of course, the evidence the United States proffers may still be admissible if Edwards testifies with broad statements or generalizations denying any misconduct.  See generally United States v. Young, 470 U.S. 1, 11-14 (1985) discussing the

doctrine of invited response). The Garcia Interview Statements may be admissible as reputation evidence if Edwards presents reputation evidence for his character for sexual purity. See Fed. R. Evid. 405.

**IT IS ORDERED** that: (i) the United States' Sealed Motion In Limine to Admit Evidence Pursuant to Fed. R. Evid. 404(B), 413, and 608, filed June 21, 2017 (Doc. 59), is denied; and (ii) the Defendant's Second Motion In Limine to Exclude Evidence of Similar Crimes in Sexual Assault Cases, filed June 21, 2017 (Doc. 59), is granted in part. The Court will exclude: (i) the CYFD Intake Form; (ii) the Facebook Accusations; (iii) C.E.A.'s Interview Statement; (iv) C.E.A.'s Denial; (v) Garcia's Interview Statements; and (vi) the Notice of Allegation. This evidence is inadmissible unless Defendant James Edwards: (i) testifies with broad statements or generalizations denying any sexual misconduct, in which case Edwards may open the door to the evidence regarding the sexual assault allegations, including the CYFD Intake Form, the Facebook Accusations, C.E.A.'s Interview Statement, C.E.A.'s Denial, the Garcia Interview Statements, or the Notice of Allegation; or (ii) offers reputation evidence for his character for sexual purity, in which case the Garcia Interview Statements may be admissible as reputation evidence under rule 405 of the Federal Rules of Evidence.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

James D. Tierney
    Acting United States Attorney
Nicholas James Marshall
Novaline Wilson
    Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

       *Attorneys for the Plaintiff*

Marshall J. Ray
Law Offices of Marshall J. Ray LLC
Albuquerque, New Mexico

-- and --

Nicole Moss
The Law Office of Nicole W. Moss LLC
Albuquerque, New Mexico

       *Attorneys for the Defendant*